15 F.3d 1085
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Richard R. HARRIS, Trustee, Plaintiff-Appellant,
v.
RESOLUTION TRUST CORPORATION, as Receiver of Arrowhead
Pacific Savings Bank; Beverly Collins; Mary
McIntire; Arrowhead Pacific, (RTC),
Defendants-Appellees.
 No. 93-55245.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 4, 1994.*
Decided Jan. 11, 1994.
 
 Before: REINHARDT, O'SCANNLAIN, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Richard R. Harris appeals pro se the district court's judgment, following a bench trial, in favor of defendants. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 * Background
 
 
 4
 In December 1987, Harris endorsed and deposited seven checks totaling $79,477.99 in his account at the Arrowhead Savings Bank ("Arrowhead"). The checks were third-party checks that had purportedly been endorsed by the various third parties and that had somehow made their way into Harris's possession. Arrowhead gave Harris immediate provisional credit on all the checks.
 
 
 5
 On January 7, 1988, one of the checks was returned to Arrowhead with a "stop payment" notice. Arrowhead accordingly withdrew the money, $17,000, from Harris's account. On January 11, 1988, Executive Life Insurance Company, the issuer of several of the checks Harris had deposited, notified Arrowhead that it was returning four of the checks. The amount of these four checks was $17,153.38. At the time, Harris did not have sufficient funds in his account to cover the overdrafts. Thus, Arrowhead contacted Harris and requested that he provide the necessary money. Harris never produced the money.
 
 
 6
 It was subsequently determined that the third-party endorsements on the checks were forged. After an investigation, Harris was convicted of, among other things, bank fraud. He was sentenced to a term in prison and ordered to pay restitution.[1]
 
 
 7
 On February 23, 1989, Harris filed this action in California state court alleging causes of action for breach of contract, fraud, and common counts. Harris sought to recover (1) the face amount of the checks with forged endorsements he had deposited in his Arrowhead account; (2) damages equal to the amount of restitution he paid following his bank fraud conviction; and (3) exemplary damages.
 
 
 8
 Harris named as defendants Arrowhead and two employees of Arrowhead. However, because Arrowhead had failed prior to the filing of this action, the Resolution Trust Corporation ("RTC"), which had been named as receiver for Arrowhead, defended the action. RTC removed the action to federal court and, on December 28, 1992, the district court entered judgment for defendants.
 
 II
 Standard of Review
 
 9
 We review questions of law de novo, Da-Green Elecs., Ltd. v. Bank of Yorba Linda, 891 F.2d 1396, 1397 (9th Cir.1989), and findings of fact for clear error, Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc., 777 F.2d 485, 487 (9th Cir.1985). The party challenging the district court's judgment has the burden of showing that the court's findings are clearly erroneous. See Fast Heat Element Mfg. Co. v. Rama Corp., 724 F.2d 802, 802 (9th Cir.1984) (per curiam).
 
 III
 Analysis
 
 10
 Harris contends the district court erred by failing to allow him to conduct a voir dire examination of the court. We are unable to review Harris's contention because he has not provided this court with a transcript of the proceedings below. See Fed.R.App.P. 10(b). We therefore decline to consider the voir dire issue. See Portland Feminist Women's Health Ctr. v. Advocates For Life, Inc., 877 F.2d 787, 789-90 (9th Cir.1989) (stating that "[w]hen an appellant fails to supply a transcript of a district court proceeding, ... [the court] may dismiss the appellant's appeal or refuse to consider the appellant's argument").
 
 
 11
 Harris also contends the district court erred by granting judgment in favor of defendants on his fraud claim. This contention lacks merit.
 
 
 12
 "Under California law, a fraud action requires: 1) misrepresentation; 2) knowledge of the falsity of the representation; 3) intent to induce reliance; 4) justifiable reliance; and 5) damages." Stewart v. Ragland, 934 F.2d 1033, 1043 (9th Cir.1991); see Gonsalves v. Hodgson, 237 P.2d 656, 662 (Cal.1951). In his complaint, Harris alleged that defendants represented to him that the checks had been returned to Arrowhead with a "stop payment" notice when in fact defendants knew the checks had been returned because of the forged endorsements. Harris also alleged that defendants failed to disclose that the validity of the checks was still in question even after the normal four-day clearing period.
 
 
 13
 The district court found that Harris was closest to the person who forged the endorsements and was therefore in the best position to determine whether the endorsements were valid. The court agreed with defendants' argument that, under the California Commercial Code, Harris should thus bear the loss caused by the forgeries. The district court also found that defendants had never represented to Harris that the checks were valid. The court specifically found that the fact that Arrowhead gave Harris provisional credit on the checks did not indicate or represent that the checks were valid.
 
 
 14
 On appeal, Harris does not cite to any specific evidence to show that the district court's findings are erroneous. In fact, as we noted above, Harris has not provided a transcript of the district court proceedings for our review. Thus, to the extent Harris raises evidentiary issues regarding his fraud claim, we decline to consider them. See Portland Feminist Women's Health Ctr., 877 F.2d at 789-90.
 
 
 15
 Harris's sole legal argument is that the district court erred by concluding he should bear the loss because he was closest to the person who forged the check endorsements. He asserts that it is "hornbook law" that he did not warrant the authenticity of the endorsements merely by presenting the checks for deposit. Harris's assertion is flatly contradicted by Cal.Com.Code Sec. 4207(a)(2).[2] Moreover, we agree with the district court that defendants did not represent that the checks were valid merely because defendants furnished provisional credit to Harris. See id. Secs. 4201 & 4212 Official Comment 1; Symonds v. Mercury Sav. & Loan Ass'n, 275 Cal.Rptr. 871, 874 (Cal.Ct.App.1990).[3]
 
 
 16
 The remainder of Harris's brief on appeal is likewise lacking in merit. To the extent Harris raises any evidentiary issues regarding the district court's findings on his negligence and common counts claims, we decline to consider them. See Portland Feminist Women's Health Ctr., 877 F.2d at 789-90. There is no legal support for Harris's assertion that defendants owed him a fiduciary duty. See Bank of Marin v. England, 385 U.S. 99, 101 (1966); Crocker-Citizens Nat'l Bank v. Control Metals Corp., 566 F.2d 631, 637 (9th Cir.1977) (noting that, in California, relationship between bank and depositor is that of debtor and creditor). Finally, we are not persuaded by Harris's assertions, unsupported by citation to any pertinent legal authority, that defendants should have sought recovery from Executive Life or Security Pacific Bank and not him, or that defendants should have returned the forged checks to him so that he could collect on them.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Harris has completed his prison term and is now on probation in Wisconsin
 
 
 [2]
 Section 4207(a)(2) provides that "[a] customer ... that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that ... [a]ll signatures on the item are authentic and authorized."
 
 
 [3]
 Section 4201 provides, in pertinent part, that
 Unless a contrary intent clearly appears and before the time that a settlement given by a collecting bank for an item is or becomes final, the bank, with respect to the item, is an agent or subagent of the owner of the item and any settlement given for the item is provisional.
 Official Comment 1 to section 4212 states, in pertinent part, that "[u]nder current bank practice, in a major portion of cases banks make provisional settlement for items when they are first received and then await subsequent determination of whether the item will be finally paid." These provisions make clear that the furnishing of "provisional credit" is a common practice at banks and should not be given any special significance.